## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| CHERI MARCHELLO, | ) | |
| | ) | |
| Plaintiff, | ) | **Complaint and Jury Trial Demanded** |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| Xcel Energy Inc., | ) | |
| a Minnesota Corporation | ) | |
| | ) | |

## COMPLAINT

COMES NOW Plaintiff, Cheri Marchello, by and through her counsel, and files Plaintiff's Complaint against Defendant Xcel Energy Inc. In support, thereof, Plaintiff states:

### INTRODUCTION

1. Plaintiff brings this suit for gender discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the Elliott-Larsen Civil Rights Act. Plaintiff filed a joint Charge of Discrimination on March 24, 2020, with the Michigan Department of Civil Rights and the United States Equal Employment Opportunity Commission. Plaintiff received a Right to Sue Letter dated September 10, 2020, and brings this action within ninety (90) days of the date of the Right to Sue Letter.

### JURISDICTION

2. This Court has original jurisdiction under 28 U.S.C. § 1332(a)(1), as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars.

3. As this action arises under the laws of the United States, it is a federal question, and this district courts shall have original jurisdiction under 28 U.S. Code § 1331.

4. Furthermore, the Court has supplemental jurisdiction over the claims brought under the law of the state of Michigan, pursuant to 28 U.S.C. § 1367(a), as all claims within this Complaint are so related that they comprise one case and all claims arise from the same operative facts.

## VENUE

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) as Plaintiff was employed by Defendant Xcel Energy Inc. in Ironwood, Michigan, and a substantial part of the events giving rise to Plaintiff's claim occurred in this judicial district.

## PARTIES

6. Plaintiff resides in the County of Gogebic and is a citizen of the State of Michigan.
7. Defendant, Xcel Energy Inc., ("Xcel Energy"), is a Minnesota-based utility holding company. Xcel Energy is incorporated in Minnesota and its headquarters are located in Minneapolis, Minnesota. The address of the registered office of Xcel Energy is 380 Jackson Street #700, St. Paul, Minnesota, 55101. District courts have jurisdiction over matters between citizens of different states. 28 U.S.C. § 1332(a)(1). A corporation is considered both a citizen of its state of incorporation and a citizen of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

## FACTS COMMON TO ALL COUNTS

8. Plaintiff is a woman.
9. Plaintiff started working for Xcel Energy in July of 2004. Since her hiring, she has been promoted steadily up the ranks of the company.
10. Plaintiff took on the role of as Senior Operations Work Coordinator in April of 2013 for Xcel Energy's facility located in Ironwood, Michigan.
11. Plaintiff is one of only a few women who have worked at Xcel Energy's Ironwood facility during the events giving rise to this litigation.
12. Plaintiff began experiencing sex-based harassment upon becoming Senior Operations Work Coordinator.

13. Soon after Plaintiff's promotion, a rumor of an affair between Plaintiff and a coworker named Murray Smerer was spread throughout the workplace. This rumor resulted in an increase in the sexual harassment directed at Plaintiff. Coworkers loudly told each other, in front of Plaintiff, that Mr. Smerer was under Plaintiff's desk. Plaintiff was also directly asked by a coworker if Mr. Smerer was currently under her desk when the coworker had a question for Mr. Smerer. These repeated sex-based aggressions considerably distressed Plaintiff.
14. On or around January, 2018, Plaintiff began seeing a Dr. Patrick Triggiano, a therapist at Aspirus Health Clinic, for work-related stress.
15. On April 18, 2018, another sexual rumor circulated among Plaintiff's coworkers, alleging that she and Tom Schmidtke, another coworker, were having an affair. This was the second rumor of this type that been circulated since Plaintiff had become Senior Operations Work Coordinator. Plaintiff reported the incident to her manager, and workforce relations.
16. Plaintiff's manager commented that many of the Xcel energy employees that worked with Plaintiff had a problem with a woman acting as their supervisor.
17. In October of 2019, Xcel Energy indicated that the company would bring a third party to help address the problem of Plaintiff's sexual harassment. This was never initiated, and Xcel Energy did not attempt to address the sex-based harassment in any other manner.
18. On January 1, 2020, a new rumor of an affair involving Plaintiff began circulating. This time the other subject was Tim Blodgett. Plaintiff reported the rumor to her director. He told Plaintiff that he would report the rumor to workforce relations again. This was the third time a sexual rumor involving Plaintiff and a coworker had been spread in the workplace.
19. On January 23, 2020, Plaintiff discovered the existence of another rumor of a sexual affair between Plaintiff and Scott Derrickson. This was the fourth rumor of a similar type spread throughout the office since the harassment of Plaintiff began.
20. This repeated and ongoing harassment has had negative effects on Plaintiff's health. Since October of 2013, Plaintiff has visited a doctor for chronic headaches, which she developed as a result of the constant harassment at work. The doctor diagnosed the pain as tension headaches. Tension headaches are exacerbated by

stress. Plaintiff underwent a computed tomography (CT) scan and was prescribed medication as a result of this diagnosis.

21. Without treatment, Plaintiff experiences three to five tension headaches every week.

22. Plaintiff's tension headaches decreased to approximately three a month since she began undergoing chiropractic treatment and regular massage therapy sessions. With her insurance, Plaintiff's copay for each visit with the massage therapist is thirty dollars.

23. The sex-based harassment and hostile environment has become so pronounced that, at the present time, Plaintiff estimates that it has been necessary for her to use approximately 276 hours of her personal vacation time in order to address and recover from the constant harassment experienced at her workplace.

24. Plaintiff has constantly been belittled and harassed by employees because she is a female in a supervisory role.

25. Certain employees repeatedly talk badly about Plaintiff and persistently create rumors that Plaintiff is having affairs with co-workers in order to get and maintain her employment.

26. Plaintiff has repeatedly reported this harassment to Xcel Energy, which has refused to do anything about it.

27. The lack of support from Xcel and the constant harassment caused Plaintiff to miss out on a position as gas manager, which she did not apply to only because of the constant sexual harassment and the company's lack of support in dealing with that harassment.

28. The employees engaging in this harassment have also harassed Plaintiff's husband outside of work

## COUNT I

## Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964

29. Plaintiff re-alleges and incorporates by reference all of the foregoing allegations.

30. In relevant part, Title VII states:

> It shall be an unlawful employment practice for an employer - - (1) to fail or refuse to hire or to discharge any individual, or otherwise to

> discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

31. Employees of Defendant sexually harassed Plaintiff and verbally attacked and demeaned her on the basis of her sex.
32. This sex-based harassment was severe and pervasive and completely unwelcome by Plaintiff.
33. The harassment was perpetrated against Plaintiff with animus for her identity as a woman.
34. Because of this sexual harassment, the conditions Plaintiff experienced in her workplace and were markedly degraded and her adversely affected her status as an employee, and gave Plaintiff serious tension headaches and resulted in numerous days of missed work.
35. Men within Xcel Energy's Ironwood facility in a position similar to Plaintiff were not targets of similar sex-based harassment.
36. This harassment caused Plaintiff to suffer near-constant tension headaches, miss numerous days of work, and prevented Plaintiff from advancing in the company or applying to the gas manager position that became available.

WHEREFORE, Plaintiff prays that this Court:

A.   Award Plaintiff compensatory damages and other monetary relief as permitted by law, compensation for substantial injury associated with, among other things, lost professional status and reputation, humiliation, emotional pain and distress, treatment needed to address medical conditions stemming from the stress of workplace harassment, and other injuries set forth in this Complaint, in an amount in excess of $75,000.

B.   Award Plaintiff reasonable attorneys' fees and expenses; and

C.   Order such other and further relief as the Court deems appropriate.

## COUNT II

## Sex-Based Hostile Workplace in Violation of Title VII of the Civil Rights Act of 1964

37. Plaintiff re-alleges and incorporates by reference all of the foregoing allegations.
38. In relevant part, Title VII states:

> It shall be an unlawful employment practice for an employer - - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
> 42 U.S.C. § 2000e-2(a).

39. Xcel Energy knew of, and allowed, the creation and persistence of a hostile workplace environment on the basis of Plaintiff's sex.
40. Xcel Energy knew of this hostile workplace environment through multiple communications and reports made by Plaintiff to several superiors.
41. The perpetrators of the sexual harassment were employees of Xcel Energy.
42. Plaintiff reported the harassment to her superiors who were also employees of Xcel Energy.
43. Xcel Energy failed to take any action to mitigate the harassment.

WHEREFORE, Plaintiff prays that this Court:

A.     Award Plaintiff compensatory damages and other monetary relief as permitted by law, compensation for substantial injury associated with, among other things, lost professional status and reputation, humiliation, emotional pain and distress, treatment needed to address medical conditions stemming from the stress of workplace harassment, and other injuries set forth in this Complaint, in an amount in excess of $75,000.

B.     Award Plaintiff reasonable attorneys' fees and expenses; and

C.     Order such other and further relief as the Court deems appropriate.

## COUNT III

**Sex Discrimination in Violation of the Elliott-Larsen Civil Rights Act**

44. Plaintiff re-alleges and incorporates by reference all of the foregoing allegations.
45. In relevant part, the Elliott-Larsen Civil Rights Act states:

> (i) Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions: (i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing. (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing. (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, education, or housing environment.

Mich. Comp. L. § 37.2103(i).

46. Plaintiff experienced discrimination on the basis of sex in the form of sexual harassment.
47. This harassment was explicitly sexual in nature.
48. Through inaction on the part of Xcel, this sexual harassment became a regular part of Plaintiff's employment.
49. The sex-based animus directed at Plaintiff diminished her ability to act as a supervisor.
50. The sexual harassment further interfered with Plaintiff's employment by necessitating that Plaintiff use her personal vacation days in order to seek treatment to address the stress and tension headaches caused by the harassment.

WHEREFORE, Plaintiff prays that this Court:

A.   Award Plaintiff compensatory damages and other monetary relief as permitted by law, compensation for substantial injury associated with, among other things, lost professional status and reputation, humiliation, emotional pain and distress, treatment

needed to address medical conditions stemming from the stress of workplace harassment, and other injuries set forth in this Complaint, in an amount to be determined at trial.

B.  Award Plaintiff reasonable attorneys' fees and expenses; and

C.  Order such other and further relief as the Court deems appropriate.

## COUNT IV

## Sex-Based Hostile Workplace in Violation of the Elliott-Larsen Civil Rights Act

51. Plaintiff re-alleges and incorporates by reference all of the foregoing allegations.

52. In relevant part, the Elliott-Larsen Civil Rights Act states:

> (i) Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions: (i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing. (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing. (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, education, or housing environment.

Mich. Comp. L. § 37.2103(i).

53. The perpetrators of the harassment were Plaintiff's coworkers at Xcel Energy and employees of Excel Energy.

54. The harassment experienced by Plaintiff was explicitly sexual in nature.

55. Xcel Energy knew of the harassment, and did nothing to curb the behavior of its employees, allowing it to become a routine part of Plaintiff's employment.

56. The sexual harassment was intended to intimidate, humiliate, and interfere with Plaintiff's ability to work at Xcel Energy.

57. The harassment created an intimidating, hostile, and offensive work environment though the constant spreading of rumors that Plaintiff engaged in multiple affairs with coworkers, and intimations of sexual acts occurring at work.

WHEREFORE, Plaintiff prays that this Court:

A.   Award Plaintiff compensatory damages and other monetary relief as permitted by law, compensation for substantial injury associated with, among other things, lost professional status and reputation, humiliation, emotional pain and distress, treatment needed to address medical conditions stemming from the stress of workplace harassment, and other injuries set forth in this Complaint, in an amount to be determined at trial.

B.   Award Plaintiff reasonable attorneys' fees and expenses; and

C.   Order such other and further relief as the Court deems appropriate.

## ATTORNEYS' FEES AND COSTS

1. Plaintiff claims entitlement to recovery of her costs, including but not limited to reasonable attorneys' fees and expert fees, should Plaintiff prevail in their action.
2. Recovery of the costs of such prosecution for violations of Title VII of the Civil Rights Act of 1964, including reasonable attorneys' fees and fees of experts, may be allowed to the prevailing party by the Court in its discretion pursuant to 42 U.S. Code § 2000e–5(k).
3. Recovery of the costs of prosecution, including attorney's fees may also be allowed under Article VIII of the Elliott-Larsen Civil Rights Act.

PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ISSUES TRIABLE BY A JURY.

Dated December 8, 2020.

                                                    /s/*James McKenzie*
                                              JAMES D. MCKENZIE P30831
                                              Attorney for Plaintiff
                                              McKenzie & Muskett, PC
                                              108 South Moore Street
                                              Bessemer, MI 49911
                                               TEL (906) 663-4771
                                           FAX (906) 663-4784